IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JESSICA SMITH

Criminal Action No.

1:24-CR-369-MHC

**Government's Sentencing Memorandum**

The United States of America, by Theodore S. Hertzberg, Acting United States Attorney, and Calvin A. Leipold, III and Bethany L. Rupert, Assistant United States Attorneys for the Northern District of Georgia, respectfully submits this memorandum in preparation for the sentencing of Defendant Jessica Smith.  For the reasons described below, the United States recommends that Defendant be sentenced to 33 months in custody and a term of supervised release.

### I.    Offense Conduct

The PSR sets out in detail the criminal activity of Defendant.  (PSR ¶¶ 9-20). Notably, Defendant straw purchased two belt-fed M240B rifles.  (PSR ¶¶ 11-15). These rifles cost approximately $18,000 each.  (PSR ¶ 13).  As the offense conduct section in the PSR is extensive, the government will simply highlight the portions it believes to be most relevant in supporting the requested sentence for Smith.

### II.    Objections to the PSR

Defendant raised two objections to the Guidelines calculation in the PSR—to the base offense level and an increase due to obstruction of justice.  Although the

1

final PSR maintained the increase due to obstruction of justice, it adjusted the base offense level due to Defendant's objection.  The government objects to the change to the base offense level.  For the reasons set forth below, the government's objection should be sustained, and Defendant's remaining objection should be overruled.

Specifically, Defendant's base offense level should be 20 because she had "knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person."  U.S.S.G. § 2K2.1(a)(4)(B)(III).  Defendant's base offense level should be increased by five levels because she purchased two firearms knowing or having reason to believe those firearms would be use unlawfully.[1]  And Defendant's base offense level should be increased by two levels for obstruction of justice, since Defendant deleted her text messages with a co-conspirator prior to her arrest.  But Defendant's base offense level should be decreased by three levels due to her acceptance of responsibility.  As a result, Defendant's adjusted offense level should be 24.  With a criminal history category of I, her adjusted Guidelines range should be 51 to 63 months.

**A. The Base Offense Level is Properly Calculated as 20**

Defendant objected to the PSR's original base offense level calculation of 20, arguing that, because Freddy Lundy—who orchestrated the purchase of each firearm—was in prison, she did not have "reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person."

---

[1] And notably, Defendant does not object to this enhancement.

U.S.S.G. § 2K2.1(a)(4)(B)(III).  Although the final PSR was adjusted in favor of this objection, that adjustment considered only whether it was possible for Lundy to receive the firearm *at the time it was purchased*, not the broader question of whether Defendant had reason to believe that her purchase would "result in" the transfer of the firearms to Lundy or *any other* prohibited person.

First, the PSR notes that Lundy, at the time of Defendant's conduct, was a Georgia Department of Corrections inmate, and Lundy organized Defendant's straw purchases of the firearms—two belt-fed M240B rifles.  (PSR ¶ 17). According to Defendant, Lundy introduced her to "Kim," who provided Defendant with the $18,000 in cash she used to purchase one of the M240B firearms in March 2024.  (*Id.* at 16-17).  Defendant admitted that she purchased the other M240B in November 2023, also using cash provided by Kim and then delivering that firearm to Kim.  (*Id.* at 16).  Thus, based on the ATF form 4473s verifying Defendant's purchases and Defendant's admissions, she had received over $36,000 in cash from people she did not know.  She used that money to buy firearms and claimed she was the true purchaser of the firearms.  And Lundy— an incarcerated felon—organized the entire operation.  Moreover, the second firearm was purchased in March 2024, and Lundy was released from prison just months later in December 2024.  Thus, whether the firearms would stay with Kim, or eventually be transferred to Lundy or someone else, Defendant had every "reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person."  U.S.S.G. § 2K2.1(a)(4)(B)(III).

3

Second, Defendant knew that Lundy was involved in illegal drug trafficking activity while in prison.  When ATF agents first reviewed Defendant's phone with her consent in March 2024, agents noted several communications with Lundy, wherein Lundy discussed his drug trafficking activity.  For example, Lundy sent Defendant a news article describing the seizure of 850 pounds of methamphetamine and complained to Defendant about "his people" getting caught with trucks full of drugs.[2]  (*See* Exhibit 1).  Additionally, Kim offered Defendant $2,000 to purchase the second firearm, which is indicative of Kim's inability to purchase the firearm herself.  (*See* Exhibit 2).  In sum, Defendant knew that an incarcerated drug dealer was introducing her to someone to buy firearms for the incarcerated dealer or someone else who worked for him, making it highly likely that Kim or others receiving those firearms were prohibited persons.

Third, the broad language of Section 2K2.1(a)(4)(B)(III) supports its application here.  In *United States v. McKenzie*, the Sixth Circuit looked at this Guidelines enhancement in a case of first impression, where it held that the "reason to believe" language in the enhancement makes its application far broader than other enhancements requiring knowledge or even deliberate avoidance of knowledge.  33 F.4th 343 (6th Cir. 2022).  Specifically, "reason to

---

[2] DEA Atlanta in fact seized over 850 pounds of methamphetamine from a storage unit in the Northern District of Georgia. *See* https://www.fox5atlanta.com/news/norcross-855-pounds-of-crystal-meth-storage-facility

believe" merely requires that "a straw purchaser [has] a basis or cause to think or suppose that the true buyer cannot possess the firearm." *Id.* at 347 (quoting *Random House Webster's Dictionary* 61, 550 (2d ed. 1996)). And the Sentencing Commission's intent in including this language alongside "knowledge" or "intent" was to "expand the Guideline's scope." *Id.* at 348.

Additionally, "[c]ourts have long equated 'reason to believe' either with the traditional probable-cause standard (which requires a "probability or substantial chance" of something) or with an even lower standard." *Id.* (citing, among other cases, *District of Columbia v. Wesby*, 138 S. Ct. 577, 586–87 (2018)). And when interpreting "reason to believe" in the context of the Guidelines, courts have used "probable-cause logic." *Id.* at 349. Thus, a straw purchaser "must know of facts that, at most, create a 'fair probability' that the buyer is a prohibited person." *Id.* Such facts include things like the defendant not being familiar with the buyer, the buyer paying in cash for the firearm, the buyer paying the defendant a large sum of money to purchase the firearm, and communications between the defendant and the buyer suggesting illegal activity. *See id.* at 349-52. Indeed, "[o]ne obvious inference as to why [a buyer would ask a defendant to buy them a gun] is because the law prohibited [the buyer] from purchasing the gun themselves— that is, because [the buyer was a] 'prohibited person'." *Id.* at 350.

Thus, based on the description of the evidence in the PSR, the Defendant was aware of facts that created a "fair probability" that Kim or the true buyer of the

firearms was a prohibited person. Defendant was introduced to a stranger by an incarcerated felon, who was engaged in drug trafficking. Defendant was given $18,000 in cash on two separate occasions to purchase two firearms. On both occasions, Defendant lied when she said she was the true buyer of the firearms, and she never asked Lundy or Kim why they needed her to purchase the firearms. And Defendant delivered both firearms to Kim and was paid $2,000 each time. All these facts are more than enough to show that Defendant had "reason to believe" that her offense would result in the transfer of the firearms to a prohibited person. Given the broad application of Section 2K2.1(a)(4)(B)(III) and the facts before the Court, it would be contrary to the enhancement's language and purpose to not apply it in this case.

### B. The PSR Properly Applies an Obstruction Enhancement

Defendant also objected to the application of a two-level obstruction of justice enhancement. (PSR ¶ 29). As the PSR notes, agents allowed Defendant to keep her phone at the time of her interdiction because she agreed to cooperate with them. (*Id*.). Agents performed a cursory review of Defendant's phone at that time and noted communications with co-conspirator Kim and attempted to record all those communications by making a video of the WhatsApp chat. Defendant then chose not to continue to cooperate with agents. When agents later seized Defendant's phone, all communications between Defendant and Kim had been deleted.

6

The Guidelines impose a two-level enhancement when a defendant "willfully obstructed or impeded or *attempted to obstruct or impede.*" U.S.S.G. § 3C1.1 (emphasis added).  Whether Defendant's attempts at obstruction in deleting the messages between Defendant and Kim were successful is immaterial to whether the enhancement applies because it's clear that Defendant *intended* to obstruct the investigation when she deleted the messages.  Defendant was aware of ATF's investigation, and she was keenly aware that ATF was interested in the messages on her phone, particularly the messages between her and Kim.  Tellingly, Defendant only deleted the messages between her and Kim and left all remaining messages intact.  Destroying evidence to present the Government from obtaining it qualifies for an obstruction enhancement. *See United States v. Malki*, 609 F.3d 503, 511 (2d Cir. 2010) (applying an obstruction enhancement when the defendant deleted cell phone records before an interview with the Government and deleted emails after the interview).

III.   **Argument**

   **A. The Correct Sentencing Guidelines Range is 51-63 months.**

In determining a reasonable sentence, the Court should begin by correctly calculating the applicable Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).  Here, the PSR calculates the Sentencing Guidelines range as 41-51 months. (PSR Part D, Sentencing Options).  The Guidelines range is based on an adjusted offense level of 22 and a criminal history category of I.  If the Court agrees with the Government, applying both the base offense level of 20 and enhancement for obstruction of

7

justice, the adjusted offense level is 24, and the correct Guidelines range is 51-63 months.

B. **The Section 3553(a) Factors Warrant a Total Sentence of 33 Months in this Case.**

After calculating the applicable Guidelines range, the Court should assess the factors set forth in 18 U.S.C. § 3553(a) to determine a reasonable sentence. *See Gall*, 552 U.S. at 49-50; *Pugh*, 515 F.3d at 1189-90. The Court is to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guideline range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

In her PSR objections, Defendant asks this Court for a non-custodial sentence. Such a request asks this Court to vary downward an additional seven or more levels from the Government's requested sentence of 33 months and is inconsistent with the 18 U.S.C. § 3553(a) factors for multiple reasons.

<u>The Nature and Circumstances of the Offense</u>

First, although Defendant is a straw purchaser—which is a crime that generally results in a low Guidelines range—Defendant's conduct is well outside that of a normal straw purchaser in that she was purchasing $18,000 belt-fed rifles intended

to be smuggled to Mexico.[3]  Defendant received a significant fee of $2,000 per purchase to buy the firearms.  And she was communicating directly with one of the supposed firearms trafficking leaders, who was an incarcerated felon.  This is a serious offense, one that Defendant willingly chose to engage in on multiple occasions.  But for ATF's investigation and interdiction, Defendant likely would have continued to straw purchase belt-fed firearms at the direction of Lundy.

Second, the firearms involved in this investigation are not commonly straw purchased.  They are not simple rifles or pistols.  In fact, the M240B rifle does not accept a magazine and is instead loaded with a belt of linked 7.62mm ammunition.  The United States Army uses the military version of this weapon as a crew-served or vehicle-mounted weapon.[4]  It is the most powerful weapon assigned to a United States Army infantry platoon.  Thus, the danger posed by these firearms is very different than that of a simple pistol or rifle.  These firearms are desired by transnational criminal organizations in Mexico who employ them against the Mexican government and each other.[5]

Third, and finally, although Defendant initially cooperated with ATF, she took the first opportunity to cease that cooperation and attempt to obstruct ATF's

---

[3] While there is no evidence Defendant knew the guns were intended to be smuggled to Mexico, that was the purpose of this conspiracy and bears on the dangerousness of Smith's conduct.

[4] The primary difference between the version of this firearm used in the military and the one Defendant purchased is that the military version is automatic.  The firearm Defendant purchased must be illegally altered to be automatic.

[5] https://www.reuters.com/investigates/special-report/mexico-usa-guns/.

investigation. Although Defendant certainly had the right to choose not to cooperate, she did not, at that point, have the right to delete evidence that she knew was of value to ATF's investigation. And she purposefully deleted only the evidence she believed valuable to ATF as was indicated by ATF during its interdiction of Defendant.

Thus, Defendant's nefarious dealings with an incarcerated felon, the types of firearms involved in the case, and her attempt to conceal or hide her involvement in the conspiracy, as well as that of a co-conspirator, all weigh in favor of a substance sentence of imprisonment.

The Defendant's History and Characteristics

Despite the seriousness of the offense, Defendant's personal history and characteristics are mitigating, which is why the government is recommending a four-level variance from the Guidelines range. In addition to her lack of criminal history, Defendant experienced a difficult childhood, including multiple serious injuries and fatalities suffered by her parents. She also currently does not have a residence, but rather, has been staying in hotels. And she has two young children in her custody. Defendant also accepted responsibility, did not engage in needless litigation, and resolved her case via information thereby saving the Government resources.

Defendant's personal history and characteristics do not warrant a further variance, however, as Defendant does have a sister who resides in Georgia and other family members who likely could care for her children while she is incarcerated. And Defendant has committed several violations while on pretrial release, including testing positive for marijuana on four separate occasions. Thus,

a non-custodial sentence or even low custodial sentence is unwarranted and would not be a just punishment.

Adequate Deterrence and Unwarranted Sentencing Disparities

A sentence any lower than 33 months—and especially a non-custodial sentence—would not be adequate to deter Defendant from future criminal conduct. And in fact, a non-custodial or low custodial sentence would send a message to other would-be straw purchasers that such conduct poses little risk to them if they choose to break the law. This is especially true considering the facts of this case, which involve belt-fed rifles being transported to Mexico.

Moreover, of all the defendants arrested and charged as part of ATF's investigation, Defendant is receiving the lowest sentencing recommendation from the government. All other defendants, including many straw purchasers, are receiving sentencing recommendations of 46 months to 70 months, due the egregiousness of this firearms trafficking conspiracy, as well as the number of firearms purchased. Due to the low number of firearms Defendant purchased and her personal characteristics, the government is recommending only 33 months in prison, but other defendants who purchased as few as 3-5 firearms will have recommended sentences that are at least one year longer than Defendant's. Thus, to sentence Defendant to less than 33 months in prison would create an unwarranted sentencing disparity. And to satisfy the § 3553(a) factors, as well as to avoid this disparity, she must face a significant sentence, just like her co-conspirators.

**Conclusion**

Based on the foregoing reasons, the Court should sentence Defendant to a term of imprisonment of 33 months, a term of supervised release, and a $200 special assessment.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*


/s/CALVIN A. LEIPOLD, III
*Assistant United States Attorney*

Georgia Bar No. 442379
Calvin.leipold@usdoj.gov@usdoj.gov


BETHANY L. RUPERT
*Assistant United States Attorney*

Georgia Bar No.971630
Bethany.rupert@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Ben Alper, Counsel for Jessica Smith

May 15, 2025

/s/ CALVIN A. LEIPOLD, III

CALVIN A. LEIPOLD, III
*Assistant United States Attorney*

13